WMP:MEB
F. #2015R02164

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**16M 386**

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH THE
CELLULAR TELEPHONE ASSIGNED
CALL NUMBER (646) 377-0851, THAT IS
STORED AT PREMISES CONTROLLED BY
METROS PCS WIRELESS, INC.

SEARCH WARRANT APPLICATION FOR
HISTORICAL CELL-SITE INFORMATION

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Joanna Beck, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for

information associated with a certain cellular telephone assigned call number (646) 377-0851

(the "SUBJECT PHONE") that is stored at premises controlled by Metro PCS Wireless, Inc., a

wireless telephone service provider headquartered at 2250 Lakeside Boulevard, Richardson, TX

75082 (the "Service Provider"). The information to be searched is described in the following

paragraphs and in Attachment A. This affidavit is made in support of an application for a search

warrant under 18 U.S.C. § 2703(c)(1)(A) to require the Service Provider to disclose to the

government copies of the information further described in Section I of Attachment B. Upon

receipt of the information described in Section I of Attachment B, government-authorized

persons will review the information to locate items described in Section II of Attachment B.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco and Firearms ("ATF")

and am currently assigned to the ATF and New York City Police Department ("NYPD") Joint

Robbery Task Force, where I am responsible for conducting and assisting in investigations into

1

the activities of individuals and criminal groups responsible for violent crimes, including robberies, burglaries, extortion, and theft. These investigations are conducted both in an undercover and overt capacity. I have participated in investigations involving search warrants and arrest warrants. As a result of my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 1951, 922(g), and 924(c) have been committed by LEONARD ELY. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, or fruits of these crimes as further described in Attachment B.

## PROBABLE CAUSE

5.      The United States is investigating a series of armed Hobbs Act robberies occurring within the Eastern District of New York and elsewhere involving indicted defendant LEONARD ELY.   In approximately December 2015, the NYPD's Central Robbery Division identified a pattern of approximately three armed robberies and one attempted robbery of two convenience stores, a gas station, and a Starbucks all in New York City and occurring between October 3, 2015 and December 6, 2015. Each robbery occurred late at night or past midnight on Saturday or Sunday, and involved one robber going into the store and brandishing a large black gun, possibly a Masterpiece Arms MPA 10T semi-automatic pistol (often referred to as a "MAC-

2

10"), and demanding money from the store. In 3 of the 4 robberies, the robber either racked or discharged the firearm, leaving a round of Winchester .45 caliber ammunition at the crime scene. The four gunpoint robberies occurred on the following days, approximate times and locations: (1) Saturday, October 3, 2015, 2:45 a.m., robbery of approximately $2,800 cash from the Farmer's Market (Queens); (2) Saturday, November 14, 2015, 3:15 a.m., robbery of approximately $600 cash from the M+H Smoke shop (Brooklyn); (3) Saturday, November 21, 2015, 8:10 p.m., robbery of $300 approximately cash from the Eagle Gas Station (Bronx); and (4) Sunday, December 6, 2015, 11:00 p.m., attempted robbery of Starbucks (Manhattan).[1]

      6.     During at least two of the robberies, the robber brandishing the Masterpiece Arms Model MPA 10T semi-automatic pistol appeared to be working with an accomplice. During the robbery of the Eagle Gas Station in the Bronx on November 21, 2015, a police officer reviewing video surveillance from nearby businesses observed the robber getting out of dark colored sedan shortly before the robbery. And following that robbery, video surveillance footage shows the robber walking away from the robbery location, with his right hand to his head, apparently calling someone on his cellphone. The Starbucks robbery occurred on December 6, 2015. Following that robbery, video surveillance from a doorman apartment building located nearby shows the robber quickly walking by the building, and then beginning to jog in order to catch up with a dark colored sedan that appears to be slowing to a stop so that the robber can get in the passenger side and make his getaway.

      7.     On December 7, 2015, building personnel from a doorman apartment building located near the Starbucks robbery location gave NYPD Police Officers identification

---

[1] A round of Winchester .45 caliber ammunition was recovered at each of the robberies other than the robbery of the M+H Smoke shop in Brooklyn.

documents, including a New York State Identification card and an ATM card, that the robber had apparently dropped and that a building worker had recovered following the robbery. Both cards were in the name of LEONARD ELY. Later that same day, a victim from the Starbucks robbery was shown a photo array that included a photo of the defendant LEONARD ELY, and the victim identified ELY as the robber.

8.    On the afternoon of December 8, 2015, NYPD Police Officers arrested the defendant LEONARD ELY without incident outside his place of work at the Christian Science Reading Room at 338 Flatbush Avenue in Brooklyn. The defendant had the SUBJECT PHONE[2] in his custody and control. After obtaining written consent from the business's manager[3] to search the basement of the property in relation to the NYPD's case against LEONARD ELY, the NYPD police officers found a gym bag on the floor of the basement where the business manager indicated that ELY kept some of his personal belongings. An NYPD Police Officer picked up the gym bag, and based on the weight and feel of the bag, believed it contained a gun. The Police Officer opened the bag and he found a Masterpiece Arms Model MPA 10T semi-

---

[2] The business manager and the defendant's Parole Officer both confirmed to NYPD that LEONARD ELY's last known cellphone number was (646) 377-0851 (the SUBJECT PHONE), and the business manager had been in phone contact with ELY a short time before his arrest on December 8, 2015.

[3] The Christian Science Reading Room is owned by the First Church of Christ, Scientist. The business manager who gave written consent for the search indicated that she represented the "Board of Trustees of First Church of Christ, Scientist, sole proprietor of the property at 338 Flatbush Ave., Brooklyn." ELY worked as a custodian at the location, and as part of his duties, had access to the basement.

4

automatic pistol, a magazine, and 23 rounds of Winchester .45 caliber ammunition. The gun appeared to be the semi-automatic pistol displayed during the four robberies described above.[4]

9.     On or about December 10, 2015, the victim from the Bronx robbery was shown a photo array including the defendant's photo, and the victim identified the defendant as the person who robbed the Eagle Gas Station on November 21, 2015. On December 15, 2015, the defendant was placed in a physical line-up conducted at the Manhattan District Attorney's Office. Five victims each separately viewed the line-up, and each identified the defendant as the person who robbed them. Those victims included the victim from the November 14, 2015 robbery of the M+H Smoke Shop in Brooklyn, and the four victims from the December 6, 2015 robbery of the Starbucks in Manhattan.

10.     Following the robberies, certain evidence gathered at the scene of the robberies was submitted for DNA examination. Two gloves recovered at the scene of the Eagle Gas Station robbery on November 21, 2015 were found to match the defendant's DNA profile. In addition, a glove recovered at the scene of the Starbuck's robbery on December 6, 2015 was also found to match the defendant's DNA profile.

11.     In addition, an examination by the NYPD lab of a shell casing and a deformed bullet for a round of Winchester .45 caliber ammunition recovered at the scene of the October 3, 2015 robbery in Queens described above was a ballistics match to the Masterpiece Arms Model MPA 10T semi-automatic pistol recovered immediately following the defendant's arrest.

12.     On April 12, 2016, LEONARD ELY was indicted by a grand jury in the Eastern District of New York on six counts, including three robbery counts in violation of 18 U.S.C. §

---

[4] ELY is a multi-convicted felon. ATF Special Agents who are nexus experts have opined that the Winchester .45 caliber ammunition and the Masterpiece Arms Model MPA 10T were manufactured in a state other than New York.

1951: Hobbs Act Robbery Conspiracy between October 3, 2015 and December 8, 2015, Hobbs

Act Robbery of the M&H Smoke Shop in Brooklyn on November 14, 2015, and Attempted

Hobbs Act Robbery of the Starbucks in Manhattan on December 6, 2015. The grand jury's

indictment also charges ELY with being Felon in Possession of Ammunition on December 6,

2015 in connection with a round of ammunition recovered at the scene of the Starbucks robbery,

a Felon in Possession of a Firearm in connection with the gun and ammunition recovered in

Brooklyn on December 8, 2015, and with Use of Firearms During One or More Crimes of

Violence.[5]

13.     In my training and experience, I have learned that the Service Provider is a

company that provides cellular telephone access to the general public. I also know that providers

of cellular telephone service have technical capabilities that allow them to collect and generate

information about the locations of the cellular telephones to which they provide service,

including cell-site data, also known as "tower/face information" or "cell tower/sector records."

Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic

areas) that received a radio signal from the cellular telephone and, in some cases, the "sector"

(i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile

or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.

Furthermore, the tower closest to a wireless device does not necessarily serve every call made to

or from that device. Accordingly, cell-site data provides an approximate location of the cellular

telephone but is typically less precise than other types of location information, such as E-911

Phase II data or Global Positioning Device ("GPS") data.

---

[5] United States v. Leonard Ely, 16-CR-183 (RRM), ECF Doc. 1.

14.     Based on my training and experience, I know that the Service Provider can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

15.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

### AUTHORIZATION REQUEST

16.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

17.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on the Service Provider, who will then

7

compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Joanna Beck
Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Subscribed and sworn to before me on this 25th day of April, 2016

THE HONORABLE VERA M. SCANLON
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

8

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number (646) 377-0851 (the "Account") that are stored at premises controlled by Metro PCS Wireless, Inc., a wireless telephone service provider headquartered at 2250 Lakeside Boulevard, Richardson, TX 75082 (the "Provider").

9

**ATTACHMENT B**

**Particular Things to be Seized**

I.    **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period October 1, 2015 through December 8, 2015:

    a.  The following information about the customers or subscribers of the Account:

        i.  Names (including subscriber names, user names, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.  Local and long distance telephone connection records;

        iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.  Length of service (including start date) and types of service utilized;

        vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

        viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records.

    b.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

        i.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

        ii.  information regarding the cell towers and sectors through which the communications were sent and received.

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C. §§ 1951, 922(g) and 924(c) involving LEONARD ELY during the period October 1, 2015 through December 8, 2015.

11